**UNITED STATES of America**

**v.**

**Brett C. KIMBERLIN.**

**No. IP 79–7–CR.**

United States District Court, S. D. Indiana, Indianapolis Division.

Dec. 10, 1981.

Kennard P. Foster and Jack T. Thar, Asst. U. S. Attys., Indianapolis, Ind., for U. S.

Nile Stanton and Kevin McShane, Indianapolis, Ind., for defendant.

ORDER

STECKLER, Chief Judge.

This matter comes before the Court on the motion, filed *in camera*, of defendant, Brett C. Kimberlin, for a new trial. Fed.R. Crim.P. 33. As grounds for this motion, defendant avers that alleged juror misconduct during the course of his trial resulted in a denial of his right to a trial by a fair and impartial jury. More specifically, defendant makes the following averments of alleged instances of juror misconduct and seeks an *in camera* hearing concerning them.

"A. On one occasion, while waiting in the jury room during a delay in the trial, one juror commented, in reference to the defendant, and in the presence of all other jurors, that 'They ought to hang him

now, so that we can go home,' or words to that effect.

B. During a delay in the trial, one juror was seen by other jurors to be consulting and referring to handwritten notes while in the jury room and in the presence of other jurors. When reminded by several of the jurors that note-taking was forbidden by the Court, the juror in question tore up the notes and presumably disposed of them.

C. During a delay in the trial, one of the jurors commented in the presence of all other jurors while in the jury room, that 'I have been hypnotized before,' or words to that effect, and then went on to discuss the experience. The defendant reasonably believes that the record on voir dire reflects that the juror in question, while under oath during the jury selection process, denied ever having been hypnotized. An intentional denial of this sort amounts to a denial of the defendant's right to intelligent exercise of peremptory challenges."

In its response to the defendant's motion, the Government argues that the alleged misconduct did not emanate from third persons outside the empaneled jury and was not of an "extraneous" nature. For that reason, the Government maintains that Fed.R.Evid. 606(b) prohibits testimony by members of the jury concerning the allegations contained in defendant's motion. Accordingly, the Government's position is that a hearing would be purposeless and that the Court must deny the defendant's motion.

■ Generally, motions for a new trial following a verdict of guilty are not favored. The Court has discretion in passing on the motion and should refuse to grant a new trial if the substantial rights of the defendant were not affected. *See* 2 C. Wright, Federal Practice and Procedure, Criminal § 551, at 481–2 (1969). Misconduct affecting the jury is frequently put forward as a reason why a new trial should be granted. *Id.,* § 554, at 488. In the seminal case concerning the standards for granting a new trial on the basis of juror misconduct, the Supreme Court stated:

"Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Mattox v. U. S.,* 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892). Consistent with the Supreme Court's opinion in *Mattox,* Fed.R.Evid. 606(b) permits a juror "[u]pon an inquiry into the validity of a verdict ... [to] testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention...." Otherwise, a juror is prohibited from testifying or giving an affidavit concerning "... any matter or statement occurring during the course of the jury's deliberations or to the effect of anything on his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict ... or concerning his mental processes in connection therewith...."

The development of the rule prohibiting jurors from impeaching their verdict, which ultimately was codified in Fed.R.Evid. 606(b), reflects a concern that without such limitations

"jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference."

*McDonald v. Pless,* 238 U.S. 264, 267–68, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915); *see also* Advisory Committee's Note on Rule 606.

Bearing in mind the above-stated general guidelines, the Court will address each of the defendant's specifications of alleged juror misconduct.

Concerning allegation A above, the alleged comment by a juror to the effect that "They ought to hang him now, so that we can go home," defendant does not explain how such a comment denied him the right to trial by a fair and impartial jury. If it is

the defendant's position that the purported remark somehow tainted the remainder of the jury panel, Fed.R.Evid. 606(b) and case law related thereto would prohibit inquiry into the thoughts and reactions of other jurors to the purported remark. *Mattox, supra; U. S. v. Shahane,* 517 F.2d 1173, 1178–79 (8th Cir. 1975), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124; *U. S. v. Blackburn,* 446 F.2d 1089, 1091 (5th Cir. 1971), *cert. denied,* 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665. If it is defendant's position that the purported remark indicated that the juror allegedly making the statement had disregarded instructions by the Court not to begin any deliberations until the cause was placed in the hands of the jury following the conclusion of the evidence, courts have held that no juror testimony is permitted concerning a juror's failure to follow the court's instructions. *Farmer's Co-op. Elev. Ass'n v. Strand,* 382 F.2d 224, 230 (8th Cir. 1967); *U. S. v. Chereton,* 309 F.2d 197 (6th Cir. 1962); *Walker v. U. S.,* 298 F.2d 217 (9th Cir. 1962). If it is defendant's position that the purported statement indicates that the speaker failed to reveal a bias against the defendant during voir dire, commentators and courts have commented that it is still better to favor the privacy of the jurors for the purpose of fostering free discussion among jurors. *See, e.g.,* J. Weinstein & M. Berger, Weinstein's Evidence ¶ 606[04] at 606–36 (1978); *see also, U. S. v. Shahane, supra* (affirmed district court's finding that juror's comments regarding dislike for drug users and "long haired lawyers" had not deprived defendant of fair trial, particularly when questions of jurors' possible prejudice had been inquired into on voir dire).

■ Therefore, in accordance with Fed.R. Evid. 606(b) and the policy reasons for its development as stated above, the Court concludes that no inquiry of the jurors concerning the purported remark or its effects on them may be made and that such purported remark may not serve as the basis for a new trial.

Turning next to allegation B, concerning the alleged note-taking by a juror, the Court first notes that it observed no note-taking by any juror in the courtroom. The manner in which allegation B is stated indicates that the alleged notes were not shown to other jurors and were disposed of prior to the commencement of jury deliberations. Although it is the practice of this Court to prohibit jurors from taking notes while in the courtroom, other courts do permit note-taking by jurors and such note-taking has not been found to be error. *See, e.g., U. S. v. Johnson,* 584 F.2d 148 (6th Cir. 1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1239, 59 L.Ed.2d 469; *U. S. v. Anthony,* 565 F.2d 533 (8th Cir. 1977); *U. S. v. Riebold,* 557 F.2d 697 (10th Cir. 1977), *cert. denied,* 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133; *see also* 1 E. Devitt and C. Blackmar, Federal Jury Practice and Instructions § 5.08 (1977). Moreover, defendant gives no hint as to how the conduct alleged in paragraph B could have prejudiced him in any way.

■ Based upon the foregoing, the Court concludes that the incident of alleged conduct stated in defendant's allegation B does not require that the defendant have a new trial.

Finally in paragraph C, the defendant alleges that during voir dire one of the jurors, not named by the defendant, denied having ever been hypnotized and then, at a later time, disclosed to the other jurors that he had been hypnotized after which he discussed the experience. Defendant argues that this juror's alleged untruthful denial on voir dire impaired his right to an intelligent use of his peremptory challenges.

The Court notes first that at defense counsel's request each prospective juror was questioned individually out of the presence of the other prospective jurors about several matters, including any experiences they may have had with, or attitudes they may have developed about hypnosis. The Court permitted counsel to conduct this portion of the voir dire examination. The examination of each individual prospective juror differed slightly in that some prospective jurors were asked questions that others were not asked. Also the format of the questions varied from prospective juror to

prospective juror. Although it is the Court's recollection that most prospective jurors were asked if they had been hypnotized, it is quite probable that counsel failed to ask the juror referred to in paragraph C this question.

■ Assuming that the allegations in paragraph C are true, the fact that as a result of the nondisclosure by the juror defendant may have failed to peremptorily challenge the juror in question would not require this Court to grant defendant a new trial. "Although the importance of peremptory challenges in criminal proceedings has long been recognized, they have not, at least yet, acquired a constitutional footing." *U. S. v. Vargas,* 606 F.2d 341, 346 (1st Cir. 1979); *Williams v. U. S.,* 418 F.2d 372, 377 (10th Cir. 1969).

Where post-verdict investigation reveals an untruth or nondisclosure on the part of jurors, courts have not permitted a defendant to impute probable prejudice to such jurors, but have required such defendants to prove actual bias or prejudice. *See, e.g., Vargas, supra,* at 344; *U. S. v. Mulligan,* 573 F.2d 775, 777 (2d Cir. 1978), *cert. denied,* 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120; *U. S. v. Robbins,* 500 F.2d 650, 653 (5th Cir. 1974) (jurors presumed impartial and unbiased); *Williams, supra,* at 377; *Turner v. U. S.,* 416 F.2d 815 (D.C.App.1969). With regard to the allegations of juror misconduct in the instant motion, defendant has neither alleged nor proven any prejudice or bias on behalf of the jurors.

Furthermore, although the alleged experience of one juror with hypnosis could be characterized as "extraneous ... information" under Fed.R.Evid. 606(b), answering the real question to be resolved with regard to the effect of the experience on the hypnotized juror and the effects of his alleged disclosure on the other jurors would require inquiry into the jurors' reactions and mental processes—an inquiry forbidden by Fed.R.Evid. 606(b).

In summary, the Court concludes that the allegations made by defendant in his motion do not require a hearing because the only types of inquiry which would aid the Court in assessing possible effects of such alleged conduct are not permitted by the Rules of Evidence. *U. S. v. Duzac,* 622 F.2d 911, 914 (5th Cir. 1980), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471. Further, the Court finds that none of the three allegations, if true, would create prejudice to the defendant such that a new trial would be warranted. Accordingly, defendant's motion for a new trial should be, and it is hereby, DENIED.

IT IS SO ORDERED.