Andrew **FORD**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 45A05–9711–CR–471.

Court of Appeals of Indiana.

Feb. 26, 1999.

Transfer Denied April 30, 1999.

Jeff Schlesinger, Crown Point, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorney for Appellant.

## OPINION

FRIEDLANDER, Judge

Andrew Ford appeals his conviction of Attempted Murder,[1] a class A felony, and Murder.[2] Upon appeal, Ford presents the following restated issues for review:

1. Did the trial court err in overruling Ford's objection to the setting of a trial date that was outside of the limits prescribed by Rule 4(C) of the Indiana Rules of Criminal Procedure?

2. Did the trial court err in denying Ford's motion to correct errors, which was based upon the contention that one of the jurors had made a determination of guilt prior to the completion of evidence?

3. Did the trial court err when it permitted a witness to testify that he had answered untruthfully in a deposition because he was concerned about his mother's safety?

4. Did the trial court err in admitting hearsay evidence?

We affirm.

---

1. Ind.Code Ann. § 35–42–1–1 (West 1998); Ind. Code Ann. § 35–41–5–1 (West 1998).

2. IC § 35–42–1–1.

The facts favorable to the judgment are that sometime early in April 1993, Terry Hodge had purchased a VCR from a woman in front of a liquor store about ten days before. Just before he bought it, Hodge saw the woman talking to Kevin Miller. Hodge apparently assumed that Miller knew the woman. In fact, the woman had attempted to sell the VCR to Miller, but Miller declined and walked away as Hodge approached. On April 13, 1993, Miller was driving a car in which Patrick Carter, the murder victim, was a passenger. While driving, they encountered a vehicle in which Hodge and Ford were passengers. The other car pulled up to Miller's car and Hodge got out and walked up to Miller seated in his car and demanded to know if Miller had the remote control that went with the VCR he had previously purchased. The two began to argue and Hodge said to Miller, "I should take your car." *Record* at 309. Hodge struck Miller and Miller struck back. Miller told Carter to retrieve Miller's gun from the glove box and shoot Hodge. Hodge jumped on Miller and said something to Ford, who got out of the other car, approached Miller's vehicle, and started shooting. Miller suffered three gunshot wounds, one in the chest and two in the abdomen, and was rendered paraplegic. Carter was shot twice and died on the scene. Ford was convicted as set out above following a jury trial.

### 1.

Ford contends the trial court erred in setting a trial date that was outside the one-year limit prescribed by Rule 4(C) of the Indiana Rules of Criminal Procedure.

We note first that Ford did not object to the setting of a trial date that was outside the one-year period set out in Crim. R. 4(C). When the trial court sets a trial date that is outside the one-year period, the defendant must apprise the court of this fact and file a timely objection to avoid waiving his right to discharge. *Wheeler v. State,* 662 N.E.2d 192 (Ind.Ct.App.1996). The court's entry indicates that, far from objecting to the resetting of trial to February 26, Ford *agreed* that trial should be reset for that date. The record reflects that Ford never filed a motion for discharge on Crim. R. 4(C)

grounds. Therefore, the issue is waived. Even were it not waived, however, the issue is without merit.

Rule 4(C) specifies that a defendant must be tried on a criminal charge within "one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later[.]" Although Ford was charged with the instant offenses on April 15, 1994, he was not arrested until July 19, 1994. Thus, the one-year period would have expired on July 19, 1995.

If a defendant seeks or acquiesces in a delay that results in a later trial date, the time limitation imposed by the speedy trial rule is extended by the length of the delay attributable to the defendant. *Isaacs v. State,* 673 N.E.2d 757 (Ind.1996). The trial originally was set for April 24, 1995, which was eighty-six days before the expiration of the period. On April 11, 1995, Ford requested a continuance of the trial and the motion was granted. Trial was reset for November 6, 1995. Because the delay between April 24 and November 6 was attributable to Ford, the State had eighty-six days from November 6, 1995 within which to bring Ford to trial. Therefore, the State had until January 31, 1996 to bring Ford to trial.

On October 19, 1995, the State requested a continuance because Miller was scheduled to undergo surgery shortly before the trial date and would not be available to testify at trial. Ford objected to a continuance, but the court's order granting the continuance reflects that Ford and the State agreed to a new trial date of February 26, 1996. "The absence of a key witness through no fault of the State is good cause for extending the time period requirements for an early trial." *Kindred v. State,* 524 N.E.2d 279, 290 (Ind.1988). Ford would not have been entitled to discharge for violation of his speedy trial right under Crim. R. 4(C).

### 2.

One of the jurors in Ford's trial worked at a truck stop. A co-worker at the truck stop claimed that he had heard the juror say, before the trial ended, that the jury would

find Ford guilty, "[be]cause he was guilty." *Record* at 8. Ford filed a motion to correct errors, seeking a new trial on the ground that the juror formed an opinion prior to the conclusion of evidence. Ford contends that the trial court erred in denying his motion to correct errors.

■ A trial court's determination concerning juror misconduct is reviewed for abuse of discretion. *Bradford v. State*, 675 N.E.2d 296 (Ind.1996).

■ We find no Indiana case supporting the proposition that a guilty verdict must be reversed when it is shown that one of the jurors formed an opinion of guilt prior to the completion of evidence. However, the State directs our attention to a case arising in the Southern District Court of Indiana that addressed the question. In *United States v. Kimberlin*, 527 F.Supp. 1010 (S.D.Ind.1981), *aff'd*, 805 F.2d 210 (7th Cir.1986), *cert. denied*, 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768, the defendant moved for a new trial on grounds of juror misconduct. One allegation of juror misconduct was that, "[o]n one occasion, while waiting in the jury room during a delay in the trial, one juror commented, in reference to the defendant, and in the presence of all other jurors, that 'They ought to hang him now, so that we can go home,' or words to that effect." *Id.* at 1010–11. In rejecting the alleged comment as a basis for granting a new trial, the court explained:

[D]efendant does not explain how such a comment denied him the right to trial by a fair and impartial jury. If it is the defendant's position that the purported remark somehow tainted the remainder of the jury panel, Fed.R.Evid. 606(b) and case law related thereto would prohibit inquiry into the thoughts and reactions of other jurors to the purported remark. If it is the defendant's position that the purported remark indicated that the juror allegedly making the statement had disregarded instructions by the Court not to begin any deliberations until the cause was placed in the hands of the jury following the conclusion of the evidence, courts have held that no juror testimony is permitted concerning a juror's failure to follow the court's instructions. If it is the defendant's position that the purported statement indicates that the speaker failed to reveal a bias against the defendant during voir dire, commentators and courts have commented that it is still better to favor the privacy of the jurors for the purpose of fostering free discussion among jurors.

Therefore, in accordance with Fed. R.Evid 606(b) and the policy reasons for its development as stated above, the Court concludes that no inquiry of the jurors concerning the purported remark or its effects on them may be made and that such purported remark may not serve as the basis for a new trial.

*Id.* at 1011–12 (citations omitted).

The issue in *Kimberlin* was, for all practical purposes, the same as the issue presented by Ford. The only difference is that the juror comment in *Kimberlin* was made to fellow jurors, whereas in the instant case, the comment allegedly was made away from the courtroom and to persons other than fellow jurors. If anything, that difference provided a stronger argument for reversal in Kimberlin's case than it does in Ford's. Ford's allegedly expressed view, at least, did not have the potential to influence the rest of the jurors.

We find the *Kimberlin* court's reasoning persuasive and entirely applicable in the instant case. Rule 606(b) of the Indiana Rules of Evidence is substantially similar to its federal counterpart, *i.e.*, Fed.R.Evid. 606(b), to which the *Kimberlin* court referred in reaching its decision. We are satisfied that the *Kimberlin* analysis of the federal rule in this context mirrors the correct analysis of Evid. R. 606(b) and adopt its reasoning. The trial court did not err in denying Ford's motion to correct errors in this regard.

3.

Ford contends that the trial court erred in permitting a witness to testify that he had answered untruthfully in a deposition because he was afraid for his mother's safety.

During an October 6, 1993 deposition, Miller stated that Mary Parker was a friend of his. In fact, Mary Parker was Miller's mother. At trial, defense counsel asked Miller

who Mary Parker was. Miller responded that Parker was his mother. Counsel then pointed out that in his deposition, Miller had stated that Parker was his friend. Upon redirect examination, the prosecutor asked Miller if he had misunderstood the question when it originally was asked at the deposition. Miller responded, "No. I gave it to him for a safety reason. Because the other guy wasn't caught and neither the woman [sic]." *Record* at 343. Ford's counsel immediately objected and asked for either a mistrial or an admonishment advising the jury that the prosecutor's question was improper. After a discussion, defense counsel asked, "Would you sustain my objection and indicate to the jury that was an improper answer and instruct the jury that the defendant wasn't even charged with the crime until October 15, 1994?" *Record* at 345. The court overruled the objection, but admonished the jury as follows:

> I overrule the objection made by counsel to that question. I would admonish the jury, however, this deposition was apparently taken on October 6th, 1993 in the case of the State of Indiana versus Terry Allen Hodge. And at that point, no charge had been filed against Andrew Ford. And, in fact, a charge was not brought against Andrew Ford until April 15th, 1994.

*Record* at 346.

■ Ford contends that Miller's response suggested to the jury that Ford would harm Miller's mother if he knew who she was. We disagree. Miller did not know Ford at the time of the shooting or thereafter. At the time that Miller gave the deposition, Ford had not yet been charged with the crime. Therefore, Miller's comment does not indicate that he believed that Ford, *in particular*, was the kind of person who would harm Miller's mother, because Miller did not know Ford. Rather, it reflected Miller's fear that the man who shot him, whatever the assailant's identity, might pose a threat to his

mother if he knew of her relationship to Miller. The trial court did not err in permitting Miller to testify as to the reason for his previous, untruthful answer. The denial of the motion for mistrial was not error.

■ Even assuming for the sake of argument that the trial court erred in permitting Miller to answer the question, reversal would not be warranted. When a defendant's motion for mistrial is denied, reversal is warranted only if the denial subjected the defendant to grave peril. *Ben–Yisrayl v. State*, 690 N.E.2d 1141 (Ind.1997), *cert. denied, Ben–Yisrayl v. Indiana*, —— U.S. ——, 119 S.Ct. 877, 142 L.Ed.2d 777. "Grave peril is measured by *the probable persuasive effect on the jury*. On appeal, the trial court's decision is *reviewed only for an abuse of discretion.*" *Id.* at 1149 (emphasis in original). "A prompt admonishment to the jury to disregard improper testimony is usually enough to avoid a mistrial." *Carter v. State*, 686 N.E.2d 834 (Ind.1997). The court admonished the jury that Ford had not been charged with the crime at the time Miller gave the deposition, thus dispelling the inference that Miller's fear may have been specific to Ford, or stemmed from a familiarity of a propensity for violence on Ford's part.

■ Finally, a trial court is in the best position to judge the impact upon the jury of improper testimony. When there is sufficient independent evidence of guilt, error in the admission of improper evidence may be harmless. *Lay v. State*, 659 N.E.2d 1005 (Ind.1995). Our review of the record reveals that there is sufficient evidence of guilt,[3] independent of Miller's statement, so as to render any error in the admission of the statement harmless beyond a reasonable doubt.

### 4.

Officer Mobley testified that as he was running to the scene of the shooting, children

---

**3.** Among other things, Officer Victor Mobley, who was nearby when he heard the shots, ran to the scene, and arrived seconds after the shooting ceased. He saw Ford on the passenger side of the car and Hodge on the driver's side, where Miller had testified the shooters were positioned. Mobley, who knew both Hodge and Ford, saw the men meet together after walking around the car. When they saw Mobley running in their direction, both men fled. When the two suspects split and ran in different directions, Officer Mobley followed Hodge and apprehended him a short time later. Hodge was carrying a handgun.

were running toward him and screaming. Mobley testified that the children said to him, "They're shooting at those boys in that car over there." *Record* at 485. Ford objected to the testimony on hearsay grounds. Ford contends that the trial court erred in admitting the testimony under the excited utterance exception to the rule against hearsay.

■ Under Evid. R. 802, hearsay is generally inadmissible unless the statement falls within one of the established hearsay exceptions. *Yamobi v. State*, 672 N.E.2d 1344 (Ind.1996). In the instant case, the trial court admitted the statement under the excited utterance exception to the hearsay rule. Of the three elements that must be established before hearsay may be admitted under this exception, Ford challenges only one, *i.e.*, that the statement is made by a declarant while under the stress of excitement caused by the event. *Id.* This inquiry is fact sensitive and must be made on a case-by-case basis. *Id.* In making this determination, the trial court should "focus on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event." *Id.* at 1346.

■ Ford contends that the State failed to prove that the children were under the influence of an exciting event because it did not elicit testimony from Officer Mobley as to the children's demeanor. Therefore, he argues, there was no showing that the children were excited. To the contrary, the evidence showed that the children had witnessed a shooting just seconds before, and were running from the scene and screaming. This evidence was more than sufficient to demonstrate that the children were under the influence of the excitement engendered by the shooting. The trial court did not err in admitting the evidence.

Judgment affirmed.

KIRSCH and MATTINGLY, JJ., concur.