**Andrew FORD, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 45A04–0010–PC–454.**

Court of Appeals of Indiana.

Sept. 26, 2001.

Andrew Ford, Carlisle, Indiana, Attorney pro se.

Karen Freeman–Wilson, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge,

### STATEMENT OF THE CASE

Petitioner–Appellant Andrew Ford ("Petitioner") appeals from the post-conviction court's order denying his petition for post-conviction relief.

We affirm.

### ISSUES

We restate the following issues raised by Petitioner:

I. Whether the post-conviction court erred by denying Petitioner's motion to withdraw his petition for post-conviction relief.

II. Whether the post-conviction court erred by finding and concluding that the trial court correctly sentenced Petitioner.

III. Whether the post-conviction court erred by finding and concluding that the trial court did not err by failing to hold an expanded hearing on Petitioner's motion to correct error based upon a juror's comments.

IV. Whether the post-conviction court erred by finding and concluding that trial and appellate counsel for Petitioner rendered effective assistance.

### FACTS AND PROCEDURAL HISTORY

We refer to our opinion in Petitioner's direct appeal for the underlying facts of this case:

The facts favorable to the judgment are that sometime early in April 1993, Terry Hodge had purchased a VCR from a woman in front of a liquor store about ten days before. Just before he bought it, Hodge saw the woman talking to Kevin Miller. Hodge apparently assumed that Miller knew the woman. In fact, the woman had attempted to sell the VCR to Miller, but Miller declined and walked away as Hodge approached. On April 13, 1993, Miller was driving a car in which Patrick Carter, the murder victim, was a passenger. The other car pulled up to Miller's car and Hodge got out and walked up to Miller seated in his car and demanded to know if Miller had the remote control that went with the VCR he had previously purchased. The two began to argue and Hodge said to Miller, "I should take your car." Hodge struck Miller and Miller struck back. Miller told Carter to retrieve Miller's gun from the glove box and shoot Hodge. Hodge jumped on Miller and said something to Ford, who got out of the other car, approached Miller's vehicle, and started shooting. Miller suffered three gunshot wounds, one in the chest and two in the abdomen, and was rendered paraplegic. Carter was shot twice and died on the scene.

*Ford v. State,* 706 N.E.2d 265, 267 (Ind.Ct. App.1999) (citations omitted).

Petitioner was convicted of the murder of Carter and the attempted murder of Miller. Weeks after the trial, Petitioner learned that a juror on his case made a comment at work, while no other jurors were present, about the fact that she was serving on a jury where a victim was in a wheelchair. The juror also indicated that "he's guilty and we're going to find him guilty because of the man in the wheelchair." (R. 84–85). After learning that new information, Petitioner filed a motion to correct error. The trial court denied

Petitioner's motion after holding an evidentiary hearing on the matter.

On direct appeal of his conviction, Petitioner raised four issues. First, he argued that the trial court improperly overruled Petitioner's objection to setting his trial date outside the statutory limit. Second, he argued that the trial court improperly denied his motion to correct error. Next, he argued that the trial court improperly permitted a witness to testify that he answered untruthfully in his deposition. Last, he argued that the trial court improperly admitted hearsay evidence. A panel of this court affirmed Petitioner's conviction. *Id.* at 266.

Petitioner filed his petition for post-conviction relief on January 25, 2000. Petitioner raised the following issues in his petition: 1) that fundamental error occurred when the trial court sentenced Petitioner to consecutive sentences for murder and attempted murder; 2) that fundamental error occurred when the trial court failed to conduct a more extensive hearing regarding the juror's comment; 3) that trial counsel was ineffective for failing to object to consecutive sentences and failing to request a more extensive hearing on the juror's comment; 4) that appellate counsel was ineffective for failing to raise the alleged sentencing error on direct appeal, failing to raise the juror's comment as error, and failing to argue that trial counsel was ineffective for failing to object to the sentencing and the juror's comment.

Prior to the hearing on Petitioner's petition, appointed counsel for Petitioner withdrew her appearance because she concluded that Petitioner's claims were without merit. Counsel advised Petitioner of the hearing date and indicated that he might request a continuance of the hearing. Petitioner filed a motion for continuance on the day of the hearing. The post-conviction court denied that motion. Petitioner then moved to withdraw his petition. That motion also was denied. At the conclusion of the hearing, the post-conviction court denied the petition. Ultimately, the post-conviction court found that the trial court did not commit fundamental error in sentencing Petitioner to consecutive sentences for murder and attempted murder, and that the trial court did not commit fundamental error by failing to hold a more extensive hearing on the issue of the juror's comment. Because the post-conviction court found that fundamental error did not occur, the post-conviction court further found that trial and appellate counsel were not ineffective for failing to object or raise these issues below. This appeal ensued.

## DISCUSSION AND DECISION
### STANDARD OF REVIEW FOR POSTCONVICTION RELIEF

 Post-conviction procedures do not afford the convicted an opportunity for a "super-appeal." *See Ben–Yisrayl v. State,* 729 N.E.2d 102, 105 (Ind.2000), *reh'g denied.* Post-conviction procedures create a narrow remedy for a subsequent collateral challenge to convictions that must be based on grounds enumerated in the post-conviction rules. *Williams v. State,* 724 N.E.2d 1070, 1076 (Ind.2000). Petitioners must establish their grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5).

 A petitioner who has been denied post-conviction relief appeals from a negative judgment. *Prowell v. State,* 741 N.E.2d 704, 708 (Ind.2001). Therefore, the petitioner must convince the court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Ben–Yisrayl,* 729 N.E.2d at 106.

Since the post-conviction court entered findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6), we will reverse those findings and that judgment only upon a showing of clear error, or that which leaves us with a definite and firm conviction that a mistake has been made. *See Prowell,* 741 N.E.2d at 708; *Ben–Yisrayl,* 729 N.E.2d at 106.

## I. WITHDRAWAL OF PETITION

Petitioner contends that the post-conviction court erred by denying Petitioner's oral motion to withdraw his petition for post-conviction relief. In his brief, Petitioner relies upon *Tapia v. State,* 734 N.E.2d 307, 309 (Ind.Ct.App.2000) to support his position that absent substantial prejudice to the State, the post-conviction trial court should grant a petitioner's motion to withdraw his petition for post-conviction relief without prejudice. However, transfer was granted in that case, and the opinion upon which he relies has been vacated. *See* Ind. Appellate Rule 58.

In *Tapia v. State,* 753 N.E.2d 581 (Ind. 2001), the supreme court held that consistent with the rules of post-conviction procedure, appellate courts should review the post-conviction trial court's actions regarding motions to withdraw petitions without prejudice under an abuse of discretion standard. *Tapia,* 753 N.E.2d at 584; Indiana Post–Conviction Rule 1(4)(c). Prejudice to the non-moving party is one indicia of an abuse of discretion, but the standard of review remains an abuse of discretion. *Id.* at 585–86.

Petitioner's counsel withdrew once she made the determination that there was no merit to Petitioner's claims. We note that this was the proper procedure pursuant to Ind. Post–Conviction Rule 1(9)(c). *See Lott v. State,* 724 N.E.2d 1118, 1119–20 (Ind.Ct.App.2000). In that situation it is appropriate to allow a petitioner to proceed *pro se* should he or she so desire.

After the post-conviction court denied Petitioner's motion for continuance, he moved to withdraw his petition in order to employ counsel to represent him. The post-conviction court denied the motion. As we have previously stated, a post-conviction court has discretion to grant a Petitioner leave to withdraw his petition for post-conviction relief. Ind. Post–Conviction Rule 1(4)(c). In fact, at any time prior to the entry of judgment the post-conviction court may grant the petitioner leave to withdraw his petition. *Id.*

■ In the present case, the post-conviction court had before it argument that the State would be prejudiced by the delay if the continuance were granted. Furthermore, the post-conviction magistrate stated that a hearing on the petition was being held primarily to allow the Petitioner to witness that his petition received careful consideration by the post-conviction court. The post-conviction magistrate also indicated that it was his opinion that the allegations in the petition could have been addressed without a hearing. In other words, the magistrate indicated that Petitioner's petition could have been summarily denied because the allegations presented could have been resolved by reviewing the petition. *See* Ind. Post–Conviction Rule 1(4)(f).

As in *Tapia,* Petitioner has done little to explain what he would gain by delaying the proceedings. Petitioner asserted that the public defender's office did not try hard enough to locate an eyewitness who failed to testify at his trial. However, Petitioner could not tell the post-conviction court what that witness would say if she were located. In addition, Petitioner argued that he was not able to make the legal arguments laid out in his petition; there-

fore, he needed time to hire private counsel to make those arguments for him.

Therefore, based upon the record and argument presented, we conclude that the post-conviction trial court did not abuse its discretion by denying Petitioner's motion to continue the matter, or by denying Petitioner's motion to withdraw his petition. However, the State and the post-conviction court would have suffered the costs of wasted time and preparation in light of the fact that the post-conviction court could have summarily denied the petition as presented. The post-conviction court did not abuse its discretion by denying Petitioner's motions.

## II. SENTENCING

Petitioner claims that the post-conviction court erred by finding and concluding that the trial court correctly sentenced Petitioner. Petitioner was convicted of murder and attempted murder. The trial court sentenced Petitioner to forty years on the murder conviction and to twenty-five years on the attempted murder conviction to be served consecutively. Petitioner claims that the trial court erred by sentencing Petitioner to consecutive, instead of concurrent, terms.

■■■ This issue was available on direct appeal, but was not argued. Claims that are available, but not presented, on direct appeal are waived for post-conviction review unless the claimed error is fundamental. *Conner v. State*, 711 N.E.2d 1238, 1246 (Ind.1999). Post-conviction procedures do not provide a petitioner with an opportunity to present freestanding claims that contend the original trial court committed error. *Lambert v. State*, 743 N.E.2d 719, 726 (Ind.2001). Therefore, we review this claim to determine if the trial court committed fundamental error.

■■■ A trial court cannot order consecutive sentences absent express statutory authority. *Weaver v. State*, 664 N.E.2d 1169, 1170 (Ind.1996). The general rule is that convicted persons are to be sentenced under the statutes in effect at the time of the commission of the crime. *Tedlock v. State*, 656 N.E.2d 273, 275 (Ind.Ct.App. 1995). However, under the doctrine of amelioration, when the penalty for a crime is decreased by an ameliorative amendment enacted after the commission of the crime but before the defendant's sentencing, the defendant may take advantage of the ameliorative amendment. *Id.*

Petitioner committed the offenses in April of 1993, and was sentenced in April of 1996. In 1994, our general assembly amended Ind.Code § 35–50–1–2 to impose a previously nonexistent limitation upon a trial court's discretion to impose consecutive sentences. *Id.* The relevant portion of the amended statute reads as follows:

The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 [habitual offender statute] and IC 35–50–2–10 [habitual substance offender statute], to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Ind.Code § 35–50–1–2 (Supp.1994) (Emphasis added).

In 1995, our general assembly again amended Ind.Code § 35–50–1–2 in pertinent part as follows:

> (b) As used in this section, "episode of criminal conduct" means offenses or a connected series of offenses that are closely related in time, place, and circumstance.

P.L. 304–1995 (Effective July 1, 1995).

The 1994 amendment to Ind.Code § 35–50–1–2, which imposed a previously nonexistent limitation upon the trial court's authority to impose consecutive sentences, is ameliorative in nature. *See Tedlock,* 656 N.E.2d at 276. Our legislature's 1995 amendment to Ind.Code § 35–50–1–2, which added a definition of the term "episode," was intended to clarify, and not change, the 1994 version of the statute. *Id.*[1]

Petitioner argues that the trial court improperly sentenced him to consecutive terms for murder and attempted murder. He contends that he should have been sentenced pursuant to the 1994 version of Ind.Code § 35–50–1–2, and that the aggregate sentence he should have received was the presumptive sentence for the murder conviction, or fifty years. *See* Ind.Code § 35–50–2–3 (Supp.1994).

In *Greer v. State,* 684 N.E.2d 1140 (Ind. 1997), the defendant appealed his convictions and aggregate sentence of 220 years. That defendant was convicted of murder, burglary, three counts of attempted murder, and criminal deviate conduct. Those offenses occurred during an episode of criminal conduct. Ind.Code § 35–50–2–3 (Supp.1994).

The trial court sentenced Greer to enhanced terms of 60 years for murder, 15 years for burglary, 40 years for each of three counts of attempted murder, and forty years for criminal deviate conduct. The trial court ordered Greer's sentence for burglary to be served concurrently with the murder sentence and ordered that the remaining sentences be served consecutively to one another.

Greer challenged the trial court's order that the remaining sentences be served consecutively to one another. Greer argued that under the sentencing statute the maximum term of imprisonment he could have received was an additional fifty years, the presumptive sentence for murder. *See* Ind.Code § 35–50–2–3 (Supp.1994).

The supreme court upheld the trial court's sentencing order finding that the trial court correctly followed the statute. Greer received enhanced sentences for each of the felonies, each of the victims suffered serious bodily injury, Greer knowingly or intentionally caused the serious bodily injury, and the sentences were enhanced and ordered consecutive due to the serious bodily injury that Greer caused. *Greer,* 684 N.E.2d at 1142–43.

■ In the present case, Petitioner was convicted of murder for which he received a forty-year sentence. While the victim of the attempted murder did suffer serious bodily injury, paraplegia, which Petitioner knowingly or intentionally caused, the sentence for attempted murder was not enhanced. In fact, for Petitioner's attempted murder conviction, he received a twenty-five year sentence to be served consecutively to the murder conviction. Petitioner could have received up to an additional

---

1. The legislature amended the statute again in 1995 by replacing "murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury" with "crimes of vio- lence." "Crimes of violence" is defined in section (a). The offense "attempted murder" is not included as a crime of violence. This amendment applies only to crimes committed after June 30, 1995.

fifty years for the attempted murder conviction pursuant to the statute to be served consecutively to the murder conviction. The Petitioner has failed to demonstrate how the trial court committed fundamental error when it sentenced Petitioner. We conclude that the post-conviction court did not err.

### III. MOTION TO CORRECT ERROR

Petitioner argues that the post-conviction court erred by finding that the trial court did not err by failing to hold a more extensive hearing on his motion to correct error. The basis of Petitioner's motion was that he was entitled to a new trial because a juror who served as a member of the jury that convicted him made a statement outside the presence of other jurors about Petitioner's guilt. Petitioner contends that a more extensive hearing on his motion was required because of things that the juror might have discussed with others. Petitioner contends that the witness who testified at Petitioner's hearing on the motion to correct error might not have overheard everything that the juror discussed with others.

Petitioner raised the issue of the juror's comments in his direct appeal. *See Ford v. State,* 706 N.E.2d 265, 268 (Ind.Ct.App. 1999). A panel of this court addressed the issue of res judicata in the context of post-conviction relief in *Maxey v. State,* 596 N.E.2d 908 (Ind.Ct.App.1992). That panel stated as follows:

The purpose of the post-conviction relief process is to raise issues not known at the time of the original trial and appeal or for some reason not available to the defendant at that time. Our rules of post-conviction procedure require all grounds for relief available to a petitioner be raised in the original petition. The rationales underlying the rule are apparent: controversies must eventually cease (the principle of finality), and judicial resources, being scarce, must not be

squandered. From these two requirements arise the legal concepts of waiver and res judicata.

*Maxey,* 596 N.E.2d at 910. (Citations omitted). The panel went on to state as follows:

Issues previously decided adversely to a petitioner's position are res judicata and not subject to further examination. It is imperative to an orderly judicial system that, at some point, controversies end. Additionally, in a normal civil action, the claim preclusion branch of res judicata bars the relitigation of both those issues raised and those which should have been raised. Post-conviction actions, of course, are not normal civil actions, but nevertheless a petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error.

*Id.* at 911. (Citations omitted).

■ In the present case, Petitioner's argument has been decided against him in his direct appeal. A panel of this court determined that there was no Indiana case supporting the proposition that a guilty verdict must be reversed when it is shown that one of the jurors formed an opinion of guilt prior to the completion of evidence. *See Ford,* 706 N.E.2d at 268. The panel opined that the juror's allegedly expressed view did not have the potential to influence the rest of the jurors because it was made out of their presence. *Id.*

Now, on appeal from the denial of his petition for post-conviction relief, Petitioner argues that the post-conviction court erred by finding that the trial court did not err by refusing to hold an expanded evidentiary hearing on the issue of what the juror said under the same circumstances that were reviewed previously. We conclude that the post-conviction court did not err by finding that the trial court followed the proper procedure. The trial court held

a hearing on Petitioner's motion. A witness testified to what he heard the juror say. It was not error for the trial court to fail to hold an expanded hearing to determine what else the juror might have said that escaped the ear of the witness.

 Furthermore, Ind. Evidence Rule 606(b) proscribes the use of a juror's affidavit to establish anything other than drug or alcohol use by a juror, the introduction of extraneous prejudicial information into the jury room, or the application of outside influences upon a juror. None of those allegations exists in the present case. In addition, Indiana follows the common law that a verdict may not be impeached by evidence from the jurors who returned it. *See Robinson v. State*, 720 N.E.2d 1269, 1272 (Ind.Ct.App.1999). A trial court is prohibited from inquiring into the intention of the jurors during deliberations. *Id.* However, an exception existed at common law, as it does today, for evidence establishing that jurors were exposed to improper, extrinsic materials during their deliberations. *Id.* That is not the situation in the case at bar. Here, a juror communicated about the case to others.

Finally, Petitioner's reliance upon *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954), is misplaced. In that case, the court held that any private communication with a juror during a trial is deemed presumptively prejudicial, and that the trial court should have held a hearing to determine the circumstances and impact upon the juror. As we previously have stated, this case involves a statement made by the juror to others. We conclude that the post-conviction court did not err.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

 Petitioner claims that trial counsel was ineffective for failing to object to the sentence entered by the trial court in Petitioner's case, and for failing to request that the trial court hold a more extensive hearing on Petitioner's motion to correct error. Petitioner also alleges that appellate counsel was ineffective for failing to argue that Petitioner improperly was sentenced by the trial court, for failing to raise the issue of ineffective assistance of trial counsel, and for failing to claim that the trial court's failure to hold a more thorough hearing on Petitioner's motion to correct error was fundamental error.

Since we have concluded that the trial court properly sentenced Petitioner and that the trial court did not err by failing to hold a more extensive motion to correct error hearing, Petitioner's arguments that trial and appellate counsel were ineffective fail. We conclude that Petitioner received effective assistance of trial and appellate counsel.

### CONCLUSION

The post-conviction court did not abuse its discretion by refusing to allow Petitioner to withdraw his petition for post-conviction relief. The post-conviction court did not err by finding that the trial court properly sentenced Petitioner. Next, the post-conviction court did not err by finding that the trial court did not err by failing to hold a more extensive hearing on Petitioner's motion to correct error. Last, the post-conviction court did not err by finding that Petitioner received effective assistance of trial and appellate counsel.

Affirmed.

BROOK, J., and BARNES, J., concur.