**Steven I. PAUL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 22A01–0304–CR–138.**

Court of Appeals of Indiana.

Dec. 9, 2003.

Rehearing Denied Jan. 29, 2004.

Michael J. McDaniel, New Albany, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Steven I. Paul (Paul) brings this interlocutory appeal arising from the trial court's denial of his Motion for Discharge pursuant to Ind.Crim. Rule 4(B)(1). The sole issue presented for review is, did the trial court err in sua sponte declaring an

emergency and continuing and rescheduling Paul's trial date?

We affirm.

The facts favorable to the ruling demonstrate that the State charged Paul with the murder of Donald Barnett on November 6, 2002. At Paul's initial hearing on the same day, the trial court scheduled trial for January 13, 2003. On November 26, 2002, Paul filed a written motion for a speedy trial. Thereafter, Paul filed a Motion for Discovery and Production of Evidence on December 17, 2003, which the trial court granted in its entirety. A discovery order was entered to that effect. The State responded to Paul's discovery request on January 9, 2003, providing, inter alia, a list of the witnesses the State intended to call at Paul's trial, including addresses and phone numbers where available, an investigative police report, an autopsy report, as well as making available audio-taped witness interviews.

On January 10, 2003, Paul filed an Objection to Trial and Motion for Discharge. The hearing on his motion occurred the same day. Paul argued that the State's discovery responses were incomplete and tendered at the last moment so as to deprive Paul of his right to a fair trial, and that his unpreparedness for the January 13, 2003 trial was through no fault of his own. In the January 10 motion, Paul simultaneously objected to the current trial date and gave notice that he would subsequently seek discharge under Crim. Rule 4(B)(1) because the State had failed to bring him to trial within seventy days as mandated by the rule.

On January 13, 2003, after the hearing on Paul's Objection to Trial and Motion for Discharge, the trial court sua sponte issued an Order Declaring Emergency and Continuing and Rescheduling Trial Date. Of special concern to the trial court was the impact of the November 2002 general election in New Albany, Indiana on the timing of Paul's trial. Specifically, the incumbent prosecutor lost his reelection bid, and, consequently, he and his staff had only nine working days to respond to the December 17 discovery order before leaving office on December 31, 2002. No discovery was provided during that time period. The new prosecutor took office on January 1, 2003, and responded to the December 17 discovery order within seven working days—on January 9, 2003—which was also four days before trial was scheduled to begin. The trial court found that the timing of the prosecutor's transition had stymied trial preparation for both sides and that proceeding to trial would severely jeopardize Paul's constitutional rights. The trial court stated that congestion of the court's calendar was not an issue, but under the "special and unique circumstances surrounding this case, the Court concludes that an emergency exists which requires that trial of this case be continued and rescheduled within a reasonable time." *Appellant's Appendix* at 97. The trial court rescheduled the trial for February 25, 2003.

On January 21, 2003, Paul filed a Motion for Discharge. A hearing was held on January 24, 2003, and Paul's motion was denied. The trial court expressly found that the State had not violated the December 17 discovery order as Paul claimed, but rather had "complied with such order to the best of its ability given the facts and circumstances of this case." *Appellant's Appendix* at 103. The trial court also held that Paul's Objection to Trial filed on January 10, 2003, was tantamount to a motion to continue and therefore inconsistent with his request for a speedy trial, and that the cases cited by Paul to support his position were good law but inapplicable to his case.

On February 7, 2003, Paul filed his Motion to Certify Ruling for Interlocutory

Appeal. On March 12, 2003, the trial court certified the interlocutory appeal, and on April 9, 2003, Paul filed his Verified Petition to Accept Interlocutory Appeal. The State filed its Notice of Non-Opposition, and on May 30, 2003, this court accepted Paul's appeal.

On interlocutory appeal, Paul contends that the State's alleged failure to provide discovery did not create an emergency preventing discharge under Crim. Rule 4(B)(1). Rather, the State's inaction required his immediate discharge because the State failed to bring him to trial within seventy days through no fault of his own. Therefore, the trial court's denial of his Motion for Discharge was clear error.

■ In reviewing a trial court's findings from the denial of a motion for discharge pursuant to Crim. Rule 4, we apply a clearly erroneous standard. *Lowrimore v. State*, 728 N.E.2d 860 (Ind.2000). We will neither reweigh the evidence nor determine the credibility of witnesses, but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. We will reverse only upon a showing of clear error, that is, that which leaves us with a definite and firm conviction that a mistake was made. *Id.*

■ A defendant's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution, and by Article I, § 12 of the Indiana Constitution. The provisions of Crim. Rule 4 implement a defendant's right to a speedy trial. Specifically, Crim. Rule 4(B)(1) provides:

If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

Crim. Rule 4(B)(1)'s direction to discharge is mandatory, and "nothing will prevent the rule's operation save its own exceptions." *Crosby v. State*, 597 N.E.2d 984, 987 (Ind.Ct.App.1992). As indicated above, the rule "excepts from the seventy-day period any time attributable to a continuance or delay by the defense, court congestion, or an emergency." *Lowrimore v. State*, 728 N.E.2d at 864. Moreover, and importantly, "the purpose of Crim. Rule 4 is to ensure early trials, not to allow defendants to manipulate the means designed for their protection and permit them to escape trials." *McKay v. State*, 714 N.E.2d 1182, 1190 (Ind.Ct.App.1999).

■ Regarding Crim. Rule 4(B)(1) in general, and the emergency and congestion exceptions in particular, our supreme court has stated:

Upon an incarcerated defendant's request for a speedy trial, Criminal Rule 4(B) requires particularized priority treatment. The rule is not satisfied merely by scheduling such a case for trial at the next date available for criminal cases or for cases generally. Rath-

er, it must be assigned a meaningful trial date within the time prescribed by the rule, if necessary superseding trial dates previously designated for civil cases and even criminal cases in which Criminal Rule 4 deadlines are not imminent. We recognize, however, that emergencies in either criminal or civil matters may occasionally interfere with this scheme. Similarly, there may be major, complex trials that have long been scheduled or that pose significant extenuating circumstances to litigants and witnesses, which will, on rare occasions, justify application of the court congestion or exigent circumstances exceptions.

*Clark v. State,* 659 N.E.2d 548, 551–52 (Ind.1995). Therefore, Crim. Rule 4(B)(1) permits trial courts, on rare occasions, to continue trials outside of the seventy-day period due to emergency exigent circumstances without running afoul of the rule's discharge mandate.

■ Paul contends the trial court's denial of his Motion for Discharge made pursuant to Crim. Rule 4(B)(1) was clear error because unpreparedness due to the State's failure to provide discovery does not constitute an emergency permitting a continuance beyond the seventy-day limitation period of the rule. As an initial matter, we note the parties disagree regarding when the seventy-day period was triggered. Paul asserts that the seventy-day period began by virtue of his oral motion at the November 6, 2002 initial hearing, while the State asserts that the clock did not start running until Paul filed his written motion for a speedy trial on November 26, 2003. We decline to reach the merits of this argument. Since the State failed to raise any objection to the calculation of the trial date or the timeliness of the Motion for Discharge to the trial court, the issue is waived.

■ Turning to the merits of Paul's argument—that the denial of his Motion for Discharge was clear error—Paul relies on a line of authority holding that the State's failure to provide discovery is not a permissible reason for delay under Crim. Rule 4 and discharge is thus mandatory. *See Marshall v. State,* 759 N.E.2d 665 (Ind.Ct. App.2001); *Crosby v. State,* 597 N.E.2d 984; *Biggs v. State,* 546 N.E.2d 1271 (Ind. Ct.App.1989). While Paul's reading of the caselaw is correct, his application to the facts of the instant case is not. *Marshall, Crosby,* and *Biggs* all involved situations where the State was found to have either violated discovery orders or been negligent in providing discovery. "To put the defendants in a position whereby they must either go to trial unprepared due to the State's failure to respond to discovery requests or be prepared to waive their rights to a speedy trial, is to put defendants in an untenable situation." *Biggs v. State,* 546 N.E.2d at 1275 (finding that the continuance of the case was due to the State's failure to comply with discovery as evidenced by the trial court's order requiring the State to comply within thirty days). *See also Crosby v. State,* 597 N.E.2d at 988–89 ("[t]he trial court made a factual finding that the reason for the delay was the State's negligence in complying with discovery and its late filing and amendment of the charges, not that an impending exigency demanded postponement"); [1]

---

1. Paul asserts that *Crosby* bears a "striking similarity" to the instant case. We disagree. In *Crosby,* the State failed to provide discovery and blamed the delay on a breakdown in communication between the prosecutor's office and a new police chief. In refusing to find an emergency exception to Crim. Rule 4(B)(1), however, this court pointedly noted that a communication breakdown "was not a one-time experience, having systematically occurred in other cases before the same trial judge." *Crosby v. State,* 597 N.E.2d at 989.

*Marshall v. State,* 759 N.E.2d at 670 (finding that the State failed to provide defendant with necessary DNA discovery despite repeated continuances).

■ In the instant case, nothing in the record suggests that any alleged failure or delay in providing discovery was attributable to the State. First, the State responded to Paul's discovery requests on January 9, 2003, producing documents and information as well as allowing Paul access to audio-taped witness statements. Admittedly, production occurred four days before the scheduled start of trial. The production, however, was made within twenty-three days of the discovery order and was not belated under Indiana Trial Rules. *See* Ind. Trial Rule 34. Second, rather than finding the State's discovery responses were inadequate, the trial court held that the "State has not violated the discovery order" but had "complied with such order to the best of its ability given the facts and circumstances of this case." *Appellant's Appendix* at 103. Namely, that discovery was provided within seven business days from when the new prosecutor took office. Finally, we note that despite Paul's argument that he requested and received the January 13, 2003 early trial date at his November 6, 2002 initial hearing, Paul did not request any discovery from the State until December 17, 2002. Paul's argument that the State bears sole responsibility for his unpreparedness is belied by the fact that he waited forty-eight days to request discovery in a murder trial set to begin in seventy days. Therefore, Paul's citation to caselaw supporting the rule that the State cannot circumvent the effect of Crim. Rule 4 by failing to provide discovery is unpersuasive.

Paul also contends that counsel's unpreparedness resulting from a failure to provide discovery does not constitute an emergency justifying delay under Crim. Rule 4(B)(1). While the term "emergency" is not defined by the Indiana Rules of Criminal Procedure, this court has determined an emergency existed where defendant's counsel was appointed less than three weeks before trial and asserted he did not have adequate time to prepare. *State v. Love,* 576 N.E.2d 623 (Ind.Ct.App. 1991). Paul argues that *Love* is distinguishable because the lack of preparation was not due to any action or inaction by the State. As previously discussed, however, the trial court affirmatively found that the State had complied with the discovery order and had done so to the best of its ability under the circumstances. Therefore, as in *Love,* Paul's lack of preparation was not due to any action or inaction by the State and unpreparedness of counsel was an emergency exigent circumstance justifying delay.

Finally, Paul contends that affirming the denial of his Motion for Discharge will allow the State in future cases to tender belated discovery, force the defendant to reschedule the trial, and eviscerate the early trial right under Crim. Rule 4(B)(1). We disagree. First, we do not envision the unique factual situation of this case arising with any frequency. Second, and more importantly, here the State was not derelict in its duties and provided discovery expeditiously under the circumstances. The trial court determined that proceeding with trial raised constitutional concerns based on Paul's lack of preparation and

---

Further, despite any alleged communication breakdown, this court held that surely some responsibility lay with the prosecutor who waited to file an entirely new charge against the defendant until "the moment before trial," despite knowing about the charge for two months. *Crosby v. State,* 597 N.E.2d at 989

continued the trial for a reasonable time, i.e., from January 13, 2003 to February 23, 2003. A greater problem would be created by holding otherwise as defendants would be encouraged to file motions for speedy trials under Rule 4(B)(1) and then delay requesting discovery, recognizing that the State's inability to comply in advance of trial will result in successful motions for discharge.

Based on the foregoing, we find that the trial court's determination that an emergency existed which required continuing and rescheduling Paul's trial date was not clearly erroneous. This determination supported the trial court's denial of Paul's Motion for Discharge pursuant to Crim. Rule 4(B)(1).[2]

Ruling affirmed.

RILEY, J., and SULLIVAN, J., concur.

2. We need not, and do not, determine if Paul's Objection to Trial and Motion for Discharge constituted a position inconsistent with his request for a speedy trial, as we have concluded that the trial court's use of the emergency exigent circumstance exception in Crim. Rule 4(B)(1) to deny Paul's Motion for Discharge was proper.