Robert Jeffrey PELLEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A05–0612–CR–726.

Court of Appeals of Indiana.

April 8, 2008.

Stacy R. Uliana, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SHARPNACK, Judge.

Robert Jeffrey Pelley appeals his convictions for four counts of murder.[1] Pelley raises three issues, which we revise and restate as:

I. Whether the trial court abused its discretion by denying Pelley's motion to dismiss, which requested discharge based upon Ind. Criminal Rule 4(C);

I. Whether the trial court erred by denying Pelley's petition to appoint a special prosecutor;

III. Whether the trial court committed fundamental error by admitting hearsay statements of a victim;

IV. Whether the trial court abused its discretion by excluding Pelley's evidence that someone else may have committed the offenses;

V. Whether the trial court abused its discretion by excluding evidence regarding the delay in bringing charges against Pelley; and

VI. Whether the evidence is sufficient to sustain Pelley's convictions.

Because we find the first issue dispositive, we need not address the remaining issues. We reverse and remand.

---

1. Ind.Code § 35–42–1–1 (1988) (subsequently amended by Pub.L. No. 296–1989, § 1 (eff. July 1, 1989); Pub.L. No. 230–1993, § 2 (eff. July 1, 1993); Pub.L. No. 261–1997, § 3 (eff. July 1, 1997); Pub.L. No. 17–2001, § 15 (eff. July 1, 2001); Pub.L. No. 151–2006, § 16 (eff. July 1, 2006); Pub.L. No. 173–2006, § 51 (eff. July 1, 2006); Pub.L. No. 1–2007, § 230 (eff. Mar. 30, 2007)).

The relevant facts follow. In April 1989, seventeen-year-old Pelley lived in Lakeville, Indiana, with his father, Robert Pelley ("Bob"), his stepmother, Dawn, his fourteen-year-old sister, Jacque, and his three stepsisters, nine-year-old Jessica, eight-year-old Janel, and six-year-old Jolene. Bob was the minister of the Olive Branch Church, and the family lived in the parsonage next door to the church.

On Sunday, April 30, 1989, the Pelley family did not appear for church services, and parishioners noticed that the Pelleys' vehicles were in the driveway, the doors to the house were locked, and the blinds and curtains were drawn. Parishioners obtained a key to the house and found Bob, Dawn, Janel, and Jolene dead from shotgun wounds. Officers located Jessica and Jacque, who had spent the night with friends, and Pelley, who had attended his senior prom on Saturday night, had spent Saturday night with friends, and had gone to Great America amusement park in Illinois with friends on Sunday.

Although Pelley was questioned regarding the murders, the State did not charge him until August 7, 2002. At that time, the State charged Pelley with four counts of murder. Pelley was arrested on August 10, 2002. On August 22, 2002, the State issued a subpoena duces tecum to the Family & Children's Center ("FCC") seeking the production of "any and all counseling records from the Rev. Robert L. Pelley family from 1986–1989." Appellant's Appendix at 245. On February 26, 2003, FCC filed a motion to quash the subpoena, alleging that the communications were privileged based upon the counselor/client privilege, which is codified at Ind.Code § 25–23.6–6–1,[2] and the psychologist/patient privilege, which is codified at Ind. Code § 25–33–1–17.[3] At a hearing on FCC's motion to quash, FCC's attorneys argued that the communications were privileged, while the prosecutor argued that the "homicide exception" applied and that the counselor/client privilege did not apply because the statute came into effect after the communications were made. *See* Ind. Code §§ 25–23.6–6–1 & 25–33–1–17. The trial court asked for Pelley's input regarding the documents, and Pelley's attorney agreed with FCC's arguments but also objected to an in camera review of the documents by the trial court. After the hearing and an in camera inspection of the FCC documents, the trial court granted

2. Ind.Code § 25–23.6–6–1 provides:
 Matters communicated to a counselor in the counselor's official capacity by a client are privileged information and may not be disclosed by the counselor to any person, except under the following circumstances:
 (1) In a criminal proceeding involving a homicide if the disclosure relates directly to the fact or immediate circumstances of the homicide.
 (2) If the communication reveals the contemplation or commission of a crime or a serious harmful act.
 \* \* \* \* \*
 (6) If the counselor has the express consent of:
 (A) the client; or
 (B) in the case of a client's death or disability, the express consent of the client's legal representative.

\* \* \* \* \*

3. Ind.Code § 25–33–1–17 provides:
 A psychologist licensed under this article may not disclose any information acquired from persons with whom the psychologist has dealt in a professional capacity, except under the following circumstances:
 (1) Trials for homicide when the disclosure relates directly to the fact or immediate circumstances of said homicide.
 \* \* \* \* \*
 (5) If the psychologist has the expressed consent of the client or subject, or in the case of a client's death or disability, the express consent of the client's legal representative.
 \* \* \* \* \*

the motion to quash on March 20, 2003, finding that the communications in the records were privileged.

On April 2, 2003, the State petitioned for certification of the trial court's order for interlocutory appeal. On April 4, 2003, the trial court certified the order for interlocutory appeal but advised the State that any delay for the interlocutory appeal would be chargeable to the State. Further, the trial court warned the State that the documents "didn't contain what you wanted them to contain." Pretrial Transcript at 452; see also Appellant's Appendix at 285 ("[The] information as is contained in such records does not relate 'directly to the fact or immediate circumstances of said homicide', whether that phrase is given a more limited meaning, or the more expansive meaning proffered by the State in its Memorandum of Law."). This court accepted jurisdiction over the interlocutory appeal and, on motion of the State, stayed the proceedings. Pelley did not participate in the interlocutory appeal.

On appeal, this court affirmed the trial court's order quashing the subpoena, *State v. Pelley*, 800 N.E.2d 630 (Ind.Ct.App. 2003), but the Indiana Supreme Court accepted transfer and, on June 14, 2005, reversed in part and affirmed in part, *State v. Pelley*, 828 N.E.2d 915 (Ind.2005). Specifically, the Indiana Supreme Court held that the counselor/client privilege of Ind.Code § 25–23.6–6–1 did not apply because the communications were made prior to the statute's enactment, that the counselor/client privilege did not have retroactive effect, and that the trial court did not abuse its discretion by concluding that the homicide exception in the psychologist/patient privilege statute did not apply. 828

N.E.2d at 920, 922–923. The opinion was certified on July 25, 2005.

Pretrial conferences were then held on August 17, 2005, and October 28, 2005.[4] At the October 28th pretrial conference, the parties agreed to a July 10, 2006, trial date. On January 4, 2006, Pelley filed a motion to dismiss requesting discharge under Ind. Criminal Rule 4(C). The trial court denied Pelley's motion to dismiss as follows:

\* \* \* \* \*

If the period of months during which the appeal pended were included in the calculation, Defendant is correct in his assertion that a Defendant need not object to a trial setting when the year had already expired. *Pearson v. State,* [619] N.E.2d 590[, 591–592 (Ind.Ct.App. 1993) ].

If however the period of time is tolled by the Interlocutory Appeal, then Defendant's failure to timely object in October 2005 to the current trial setting would constitute a waiver of his right to object. *Vermillion v. State,* 719 N.E.2d 1201 [ (Ind.1999) ].

The Court having considered [*State ex rel. Cox v. Superior Court of Madison County,* 445 N.E.2d 1367 (Ind.1983),] and *Martin* [*v. State,* 245 Ind. 224, 194 N.E.2d 721 (1963),] finds that while the Defendant did not cause the delays attendant to the Interlocutory Appeal here, the period of such delay tolls the time period contemplated in C.R. 4.

In *Martin,* the Supreme Court of Indiana while considering a statute addressing the Defendant's speedy trial rights; and reiterating the duties of the prosecuting attorney and Trial Court to bring a Defendant to trial in a timely

---

4. The October 2005 pretrial conference was originally set for October 10, 2005, but the pretrial conference was continued at Pelley's request. Pelley filed his motion to continue on October 5, 2005, and the pretrial conference was reset for October 28, 2005.

fashion, also noted that such rule did not apply to the Appellate Court. The Court noted that neither prosecutor nor Trial Court could exercise any control over the judicial process in the Supreme Court.[ ]

For the foregoing reasons, the Defendant's Supplemental Motion to Dismiss is denied.

Appellant's Appendix at 487–488 (footnote omitted). In a footnote, the trial court noted:

It should be further noted that the Indiana Court of Appeals entered a Stay of Proceedings on June 19, 2003 precluding the trial court from exercising jurisdiction herein pending resolution of the appeal. Though the grounds for the issuance of the stay are not a part of the record, this court assumes that the Appellate Court was aware that such stay would interfere with observance of the Defendant's C.R. 4(C) Rights.

*Id.* at 488 n. 3.

On June 29, 2006, Pelley filed a Petition for Writ of Prohibition and Writ of Mandamus, a Petition for Emergency Writ, and a brief in support with the Indiana Supreme Court. Pelley argued that the trial court should have granted his motion to dismiss based upon Ind. Criminal Rule 4(C). The Indiana Supreme Court denied Pelley's petition.

Pelley's jury trial began on July 10, 2006. The jury found Pelley guilty as charged. The trial court then sentenced Pelley to serve consecutive forty-year sentences for an aggregate sentence of 160 years. Pelley filed a motion to correct error, which the trial court denied.

■ The dispositive issue is whether the trial court abused its discretion by denying Pelley's motion to dismiss, which requested discharge based upon Ind. Criminal Rule 4(C). Before addressing the parties' specific arguments regarding Rule 4(C), we must first address the State's argument that this issue is barred by res judicata because Pelley raised this issue in his Petition for Writ of Mandamus and Writ of Prohibition.

■ The doctrine of res judicata bars a later suit when an earlier suit resulted in a final judgment on the merits, was based on proper jurisdiction, and involved the same cause of action and the same parties as the later suit. *Reed v. State,* 856 N.E.2d 1189, 1194 (Ind.2006). The doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute. *Id.* We conclude that res judicata does not bar our consideration of Pelley's argument because Pelley's petition for writ of mandamus did not result in a final judgment on the merits.

■ Pelley's petition was brought as an original action. Such an action "is an extraordinary remedy, equitable in nature, and viewed with disfavor." *State ex rel. Hoffman v. Allen Circuit Court,* 868 N.E.2d 470, 472 (Ind.2007); Ind. Original Action Rule 2(E) ("Original actions are viewed with disfavor and may not be used as substitutes for appeals."). There are six general requirements for the issuance of a writ of mandamus or prohibition: (1) a showing that the Indiana Supreme Court has jurisdiction over the matter; (2) the writ is sought expeditiously; (3) the respondent court has exceeded its jurisdiction or failed to act when it was under a duty to act; (4) the absence of jurisdiction or failure to act was raised in a written motion before the respondent court and the motion was denied or not timely ruled on; (5) the denial of a writ will result in extreme hardship; and (6) the remedy available by appeal will be wholly inadequate. *See* Ind. Original Action Rule 3(A); *see also Haddix v. State,* 827 N.E.2d 1160, 1166 (Ind.Ct.App.2005), *trans. denied.*

Here, the Indiana Supreme Court did not explain the basis for its denial of Pelley's petition for writ of mandamus. For us to conclude that res judicata bars Pelley's argument, we would have to conclude that the Indiana Supreme Court denied Pelley's petition for writ of mandamus because the trial court did not have a duty to grant Pelley's motion for discharge under Ind. Criminal Rule 4(C). However, two other possibilities exist. The Indiana Supreme Court could have denied the petition because the denial of the writ would not result in extreme hardship or because the remedy available by appeal was adequate. *See, e.g., Vermillion v. State,* 719 N.E.2d 1201, 1204 n. 5 (Ind.1999) (holding that the defendant's claim that he was entitled to discharge under Ind. Criminal Rule 4(C) was not barred by the law of the case even though the Indiana Supreme Court had previously rejected the defendant's original action, "[n]oting that an original action may not be used as a substitute for an appeal, that the defendant claimed that certain continuances were made necessary because of the prosecutor's action, and that the 'face of the record does not justify such an assertion' "). On this record, we cannot conclude that the Indiana Supreme Court rendered a judgment on the merits or that Pelley's claim is barred by res judicata. Consequently, we will address Pelley's argument regarding the trial court's denial of his

motion to dismiss, which requested discharge under Ind. Criminal Rule 4(C).

 The right of an accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 12 of the Indiana Constitution.[5] *Clark v. State,* 659 N.E.2d 548, 551 (Ind.1995). "This fundamental principle of constitutional law has long been zealously guarded by this Court." *Id.* (internal citation omitted). "To this end, the provisions of Indiana Criminal Rule 4 implement the defendant's speedy trial right." *Id.* "Criminal Rule 4 exists in order to implement the basic right to speedy trial of those accused of crime and who are therefore in confinement or restrained on recognizance. Criminal justice must be administered by the courts with the highest regard for this constitutional right." *Huffman v. State,* 502 N.E.2d 906, 907 (Ind.1987) (quoting *Gill v. State,* 267 Ind. 160, 165, 368 N.E.2d 1159, 1161 (1977)), *reh'g denied.*

 Ind. Criminal Rule 4(C) provides: No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his

---

5. The Sixth Amendment to the United States Constitution guarantees every accused person the right to a speedy trial. Article I, § 12 of the Indiana Constitution provides that justice shall be administered "speedily and without delay." Although these constitutional provisions guarantee a speedy trial, they do not guarantee a trial within a particular time. *Sturgeon v. State,* 683 N.E.2d 612, 615 (Ind. Ct.App.1997), *trans. denied.* The inquiry as to whether a defendant has been denied a speedy trial under the Sixth Amendment involves balancing a number of factors: (1) the length of delay; (2) the reason for the delay;

(3) the defendant's assertion of the right to a speedy trial; and (4) any resulting prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The United States Supreme Court applied *Wingo* and analyzed the effect of an interlocutory appeal on a defendant's Sixth Amendment right to a speedy trial in *U.S. v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), *reh'g denied,* and held that an interlocutory appeal did not deny the defendant a speedy trial under the Sixth Amendment.

motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

"The rule places an affirmative duty on the State to bring a defendant to trial within one year of being charged or arrested, but allows for extensions of that time for various reasons." *Cook v. State*, 810 N.E.2d 1064, 1065 (Ind.2004) (citing *Ritchison v. State*, 708 N.E.2d 604, 606 (Ind.Ct.App. 1999), *reh'g denied*, trans. *denied*). For instance, "[i]f a delay is caused by the defendant's own motion or action, the one-year time limit is extended accordingly." *Id.* at 1066 (quoting *Frisbie v. State*, 687 N.E.2d 1215, 1217 (Ind.Ct.App.1997), *reh'g denied, trans. denied* ).

Pelley argues that his rights under Ind. Criminal Rule 4(C) were violated by the 1430–day delay between his arrest and the start of his trial. The majority of this time was consumed by the State's interlocutory appeal of the trial court's grant of FCC's motion to quash. Specifically, the trial court granted the State's petition to certify

the order for interlocutory appeal on April 4, 2003, and the Indiana Supreme Court's opinion was issued on June 14, 2005, and certified on July 25, 2005, resulting in a delay of either 802 days or 843 days.

 The State concedes that the delay caused by its interlocutory appeal is "the critical, dispositive inquiry" in this issue. Appellee's Brief at 23. After the Indiana Supreme Court issued its opinion, a pretrial conference was held on October 28, 2005, and the parties agreed to a July 10, 2006, trial date. If the interlocutory appeal is chargeable to Pelley, the one-year period under Rule 4(C) had not yet expired at the time of the pretrial conference.[6] "When a trial court, acting within the one-year period of the rule, schedules trial to begin beyond the one-year limit, the defendant must make a timely objection to the trial date or waive his right to a speedy trial." *Vermillion*, 719 N.E.2d at 1204. Thus, Pelley would have waived his rights under Rule 4(C) by failing to object to the trial date. However, if the interlocutory appeal is chargeable to the State, the one-year period under Rule 4(C) would have already expired at the time of the October 2005 pretrial conference. A defendant has no duty to object to the setting of a belated trial date when the act of setting such date occurs after the time expires such that the court cannot reset the trial date within the time allotted by the rule. *Young v. State*, 765 N.E.2d 673, 679 (Ind.Ct.App.2002). Thus, Pelley's motion to dismiss would have been timely.

 Whether the delay for the State's interlocutory appeal regarding a third-par-

---

**6.** If the interlocutory appeal is not chargeable to the State, either 309 or 350 days (237 days from August 10, 2002, arrest to the April 4, 2003 interlocutory appeal plus either 72 or 113 days from the conclusion of the interlocutory appeal to Pelley's October 5, 2005, mo-

tion to continue the pretrial conference) would have been chargeable to the State at the time of the October 28, 2005 pretrial conference. The delay of 23 days resulting from Pelley's motion to continue the pretrial conference is chargeable to Pelley.

ty's motion to quash is chargeable to Pelley or the State under Rule 4(C) is an issue of first impression in this State. In arguing that the time is chargeable to Pelley, the State relies upon *Martin v. State*, 245 Ind. 224, 194 N.E.2d 721 (1963), and *State ex rel. Cox v. Superior Court of Madison County*, 445 N.E.2d 1367 (Ind. 1983).

In *Martin*, relying upon a prior version of Ind. Criminal Rule 4(C), the defendant argued that the trial court erred by denying his motion to dismiss because "more than three terms of court had elapsed without trial, and without fault of [defendant]." 245 Ind. at 227, 194 N.E.2d at 723. The delay was caused when the State filed a motion for change of judge, the special judge denied the motion, and the State filed a petition for writ of mandamus. *Id.* at 228, 194 N.E.2d at 723. The Indiana Supreme Court concluded that the State was entitled to the change of judge and issued a writ. *Id.* The defendant then argued that he was entitled to discharge due to the delay in his trial. *Id.*, 194 N.E.2d at 724.

On appeal, the Indiana Supreme Court disagreed with the defendant and held:

> Although in the proceedings for a writ of mandamus, the trial judge, and not the appellant here, was named as respondent, we judicially know that ordinarily the adverse parties in the action before the court are the real parties in interest in resisting the action which the petitioner would require of the trial court. In this particular case, this court not only had judicial knowledge of the normal interest of the appellant in the proceedings; here the attorneys for appellant, as shown by the record, actually represented the respondent judge in opposing the remedial action to which the relator was entitled. Under these circumstances, the appellant cannot, with

propriety, deny that the delay occasioned by these proceedings was chargeable to him.

*Id.* Further, the court noted that the statute "cast an imperative duty upon the state and its officers, *the trial courts and prosecuting attorneys*, to see that a defendant held on recognizance *is brought to trial....*" *Id.* at 229, 194 N.E.2d at 724 (emphasis in original). Emphasizing that the "responsibility for bringing the action to trial is thrust upon the prosecuting attorney and the trial judge" and neither "could exercise any control over the judicial process in [the appellate] court," the court noted:

> To hold that any proceedings filed by the state in this court must count as termtime, within the contemplation of the statute, would amount to applying the statutory proscription in many, if not a majority, of the cases brought before this court, since the procedural process in bringing an action to this court, and the deliberative period required for an adjudication of the issues presented, would normally exceed the period of two or three terms of the trial court, as specified in the statute. It is inconceivable that such was the intention of the legislature which enacted the law.

*Id.* at 229–230, 194 N.E.2d at 724. The Indiana Supreme Court then concluded with: "This court has held that where the appellant sets in motion the chain of events that causes the delay, he is not entitled to discharge under § 9–1403 [predecessor to Ind. Criminal Rule 4(C) ]." *Id.* at 230, 194 N.E.2d at 724. However, the facts of the case do not reveal any action on the part of the defendant to "set in motion" the State's petition for a writ of mandamus. Rather, the defendant's attorneys actively resisted the petition by representing the respondent judge during the mandamus action.

In *Cox*, the defendant filed a motion in limine, which the trial court granted. 445 N.E.2d at 1368. The State then took an interlocutory appeal regarding the motion in limine. *Id.* The defendant filed a motion for discharge, which the trial court denied. *Id.* On appeal, the defendant argued that the time required for the State's interlocutory appeal was not attributable to him. *Id.* The Indiana Supreme Court first noted: "Whether the acts causing the delay are meritorious or justifiable is of no moment. It is the effect of those acts that determines whether the delay is attributable to the defendant." *Id.* The court then noted that where the defendant sets in motion a chain of events resulting in delay, the delay is chargeable to the defendant. *Id.* (citing *Bradberry v. State*, 266 Ind. 530, 364 N.E.2d 1183 (1977)). Relying upon *Martin*, the court held that the defendant was "properly charged with the delay occasioned by the State's appeal of the favorable ruling on his motion in limine. The time limitation is tolled pending the State's interlocutory appeal." *Id.* at 1369.

Here, the State issued a subpoena duces tecum to FCC regarding the counseling records of Pelley, his father, and his stepmother, and FCC filed a petition to quash the subpoena due to a claim of counselor/client privilege and psychologist/patient privilege. At a hearing on FCC's petition, FCC's attorneys and the State presented arguments. In response to an inquiry by the trial court, Pelley's attorney agreed with FCC's arguments and also objected to an in camera review of the documents by the trial court. After the trial court quashed the subpoena, the State received permission to file an interlocutory appeal, and Pelley did not participate in the appeal.

Ind. Criminal Rule 4(C) allocates a delay to the defendant if the "delay was caused by his act." In *Martin*, the defendant's attorneys participated in the appeal, and in *Cox*, the defendant's motion in limine led to the appeal. Here, Pelley did not file the motion to quash, and neither Pelley nor his attorneys were involved in the appeal. Pelley's sole involvement in FCC's motion to quash was his attorney's statements at the hearing on the motion.

Despite Pelley's lack of involvement in the motion to quash or interlocutory appeal, the State contends that Pelley was the real party in interest and that FCC was acting on Pelley's behalf because Pelley, as the patient, held the privilege. Granted, under FCC's interpretation of the privilege statutes, FCC could have disclosed Pelley's counseling and psychological records if Pelley had given his express consent. *See* Ind.Code §§ 25–23.6–6–1(6)(A), 25–33–1–17(5); *Summerlin v. State*, 256 Ind. 652, 657, 271 N.E.2d 411, 413 (1971) (noting that "the doctor-patient privilege belongs to the patient only which he may waive"). Pelley could not, however, give consent for the release of his father and stepmother's counseling records. *See* Ind.Code §§ 25–23.6–6–1(6)(B), 25–33–1–17(5) ("[I]n the case of a client's death or disability," a counselor or psychologist may disclose privileged communications with "the express consent of the client's legal representative."). While Pelley obviously had an interest in the privacy of his mental health records, FCC also had an interest in complying with its statutory obligations. Although the Indiana Supreme Court ultimately concluded that the counselor privilege did not apply, *see Pelley*, 828 N.E.2d at 920, the issue was not settled at the time of FCC's motion to quash. Moreover, the Indiana Supreme Court affirmed the trial court's decision that the communications between FCC's psychologist and the Pelley family were privileged and not discoverable. Improper disclosure of the materials could have subjected FCC to liability. *See, e.g., Munsell*

v. Hambright, 776 N.E.2d 1272, 1279 (Ind. Ct.App.2002) (discussing a patient's negligence claim against mental health professionals which alleged several theories of negligence per se for breaching the statutory duty of mental health professionals to maintain confidentiality and noting that "a non-excused or non-justified violation of a duty prescribed by statute or ordinance is negligence per se"), *trans. denied.*

Moreover, as Pelley notes, the State's argument that he was the real party in interest and could have waived his privilege to avoid the delay places him in the "untenable" position of choosing between waiving his counselor/client and psychologist/patient privileges or his right to a speedy trial under Rule 4(C). Appellant's Reply Brief at 14. We reached a similar conclusion in *Marshall v. State,* 759 N.E.2d 665 (Ind.Ct.App.2001). There, the defendant's trial date was continued for the State to provide discovery regarding DNA testing that it had performed. 759 N.E.2d at 670. We held that the delay was chargeable to the State because:

> Holding the State accountable for this delay is consistent with our holding in *Biggs v. State,* 546 N.E.2d 1271 (Ind.Ct. App.1989). As we noted in *Biggs:*
>
>> [t]o put [a defendant] in a position whereby [he] must either go to trial unprepared due to the State's failure to respond to discovery requests or be prepared to waive [his right] to a

speedy trial, is to put the defendants in an untenable situation.

*Id.* at 1275. Consequently, we will not charge Marshall with the delay from September 12, 2000 to November 21, 2000, because the trial court's CCS entry clearly charged this delay to the State.

*Id.* As in *Marshall,* Pelley should not have been required to choose between his rights. We cannot conclude that Pelley was the real party in interest or that he was responsible for the delay based upon his minimal involvement at FCC's hearing.[7]

The State also argues that, as in *Martin,* the delay due to the interlocutory appeal is not chargeable to it because it had no control over the length of the appellate process. The basis for the decision in *Martin* was the fact that the defendant's counsel represented the trial judge in the mandamus action. *See Martin,* 245 Ind. at 228, 194 N.E.2d at 724. The court's comments regarding the State having no control over the length of the appellate process were dicta. The comments also conflict with the language of Rule 4(C) and more recent pronouncements of the Indiana Supreme Court regarding assigning delays to a defendant where the defendant takes action resulting in a delay.[8] *See, e.g.,* Cook, 810 N.E.2d at 1066–1067 (holding that when "a defendant takes action which delays the proceeding, that time is chargeable to the defendant and extends

---

7. Pelley also emphasizes that the delay was unnecessary because the State did not use the counseling records at the trial. However, "[w]hether the acts causing the delay are meritorious or justifiable is of no moment. It is the effect of those acts that determines whether the delay is attributable to the defendant." *Cox,* 445 N.E.2d at 1368.

8. The dissent argues that the delay caused by the interlocutory appeal should be characterized as an "emergency" or caused by court

"congestion." Although Ind. Criminal Rule 4(C) allows the one-year deadline to be extended due to court congestion or an emergency, we do not believe that the delay caused by the State's interlocutory appeal fits within either category. Moreover, Rule 4(C) requires either a timely motion by the prosecutor in the event of court congestion or an order by the trial court granting a continuance due to court congestion or emergency. *See* Ind. Criminal Rule 4(C).

the one-year time limit, regardless of whether a trial date has been set at the time or not"); *Huffman*, 502 N.E.2d at 908 (holding that the defendant was entitled to discharge under Rule 4(C) where no delay was attributable to the defendant).

Moreover, the State's interpretation of *Martin* would create a blanket exception under Ind. Criminal Rule 4(C) for delays caused by interlocutory appeals. Although some states have such blanket exceptions, Indiana does not. *See* Kan. Stat. Ann. § 22–3604 ("The time during which an appeal by the prosecution is pending shall not be counted for the purpose of determining whether a defendant is entitled to discharge under K.S.A. 22–3402 and amendments thereto."). In order to accept the State's argument, we would have to rewrite Rule 4(C) to include a blanket exception for interlocutory appeals. "When construing procedural rules, it is appropriate to look to established principles of statutory construction." *Johnson v. State,* 708 N.E.2d 912, 915 (Ind. Ct.App.1999), trans. *denied.* "Criminal statutes 'cannot be enlarged by construction, implication, or intendment beyond the fair meaning of the language used.'" *Id.* (quoting *Gore v. State,* 456 N.E.2d 1030, 1033 (Ind.Ct.App.1983)). We are constrained to interpret and apply the rule as it is written. Consequently, we cannot write in a blanket exception for interlocutory appeals.

The State argues that this interpretation impairs its ability to initiate interlocutory appeals in criminal cases. *See* Ind.Code § 35–38–4–2(6) (authorizing the State to take an interlocutory appeal "if the trial court certifies and the court on appeal or a judge thereof finds on petition that: (A) the appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is

withheld until after judgment; (B) the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or (C) the remedy by appeal after judgment is otherwise inadequate"). We emphasize the unusual circumstances of this case. In most cases, the defendant will be a participant in the interlocutory appeal or the interlocutory appeal will be set into motion by a defendant's motion or actions. *See Cox,* 445 N.E.2d at 1368 (noting that, where the defendant sets in motion a chain of events resulting in delay, the delay is chargeable to the defendant). Here, the interlocutory appeal concerned a motion to quash a subpoena duces tecum filed by a third party. Moreover, the State's substantial delay in seeking the counseling records was an unusual circumstance. Although the State could have sought the records in the thirteen years between the murders and the time Pelley was charged and avoided the delay at issue here, the State did not do so. *See* Ind.Code § 33–39–1–4 (authorizing a prosecutor to obtain investigative pre-charge subpoenas duces tecum) (formerly Ind.Code § 33–14–1–3 (repealed by Pub.L. No. 98–2004, § 164)); *Oman v. State,* 737 N.E.2d 1131, 1136–1138 (Ind.2000) (discussing investigative pre-charge subpoenas duces tecum), *reh'g denied, cert. denied,* 534 U.S. 814, 122 S.Ct. 38, 151 L.Ed.2d 12 (2001).

We conclude that Pelley was not responsible for the delay caused by the interlocutory appeal. In so concluding, we find the Indiana Supreme Court's comments in *Huffman* fitting here:

This case confronts this Court with an extremely unpleasant but compelling responsibility. We realize that the defendant was ultimately convicted following an arduous jury trial. Such cases extract an enormous personal toll from the witnesses, jurors, and others participat-

ing. Resulting costs are significant and burden our taxpayers, and the time devoted to such trials and subsequent proceedings operate to delay the resolution of other pending controversies. It is with extreme reluctance that we must consider setting aside the defendant's conviction, thus rendering futile the results of the jury trial which found the defendant guilty beyond a reasonable doubt.

502 N.E.2d at 908. The one-year period under Rule 4(C) had already expired when Pelley agreed to the July 2006 trial date during the October 2005 pretrial conference. Pelley had no duty to object at that time, and his January 2006 motion to dismiss was timely. The trial court abused its discretion by denying Pelley's motion to dismiss. *See, e.g., Young v. State,* 521 N.E.2d 671, 673 (Ind.1988) ("Young's action did not cause his [public defender's] resignation, and he cannot be charged with this delay."); *Marshall,* 759 N.E.2d at 670–671 (charging a delay to the State where the State filed a motion for continuance due to the State's inability to comply with the defendant's discovery request); *Haston v. State,* 695 N.E.2d 1042, 1044 (Ind.Ct.App.1998) (attributing delay to the State where the defendant failed to perfect his interlocutory appeal but the trial date was not reset for more than three years).

For the foregoing reasons, we reverse the trial court's denial of Pelley's motion to dismiss, which requested discharge under Ind. Criminal Rule 4(C), and remand to the trial court with instructions to grant Pelley's motion to dismiss.

Reversed and remanded.

RILEY, J. concurs.

FRIEDLANDER, J. dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent from the Majority's conclusion that the trial court should have granted Pelley's motion to dismiss and for discharge under Indiana Criminal Rule 4(C). Although Pelley presents other issues, I address only this one, as it is the basis of the decision to reverse.

As a preliminary matter, I agree that the denial of Pelley's Petition for Writ of Prohibition and Writ of Mandamus did not constitute a ruling on the merits of his Crim. R. 4(C) claim. As the Majority notes, the Supreme Court could have denied the petition upon several bases, only one of which was a ruling on the merits of the Crim. R. 4(C) argument. Thus, res judicata does not bar our consideration of this issue.

We start with the principle that the State has an affirmative duty to bring a defendant to trial within one year. *State v. Huber,* 843 N.E.2d 571 (Ind.Ct.App. 2006), *trans. denied.* The trial court is charged with the task of making the factual determinations regarding who should be charged with any delays that occurred in going to trial. *Id.* The dispositive question in this case, as framed by the Majority's decision, is whether, for purposes of Crim. R. 4(C), the delay occasioned by the State's interlocutory appeal should be "charged" to Pelley or the State. The difficulty here is that the interlocutory appeal stemmed from the legal actions of a third party—the Family and Children's Center (FCC). Thus, we are confronted with a question of first impression in Indiana: for purposes of Crim. R. 4(C), against whom should the delay occasioned by the legal maneuvers of a third party be charged—the defendant or the State? The Majority concludes that it cannot be charged to Pelley and thus must be charged to the State. I disagree.

It appears at first blush that we have only two choices in resolving this issue: the delay caused by the interlocutory appeal (1) was charged to Pelley or (2) it was charged to the State. As I read Crim. R. 4(C) and the cases interpreting it, we seem to be dealing with, in essence, the concept of fault, or something akin to it. The Majority ably sets out the boilerplate decisional law that has developed in interpreting the rule. In each case, it boils down to a single question: who "caused" the delay in question? At the risk of oversimplification, we have determined generally that the clock stops running where the defendant affirmatively asks for a delay, *see, e.g., State ex rel. Bramley v. Tipton Circuit Court*, 835 N.E.2d 479 (Ind.2005), affirmatively acquiesces in a continuance or delay, *see, e.g., Ford v. State*, 706 N.E.2d 265 (Ind.Ct.App.1999), *trans. denied*, or acts in such a way as to necessitate delay, such as through a motion to dismiss counsel, *see, e.g., Foster v. State*, 795 N.E.2d 1078 (Ind.Ct.App.2003), *trans. denied*, or discovery-related matters, *see, e.g., Paul v. State*, 799 N.E.2d 1194 (Ind.Ct.App.2003).

Thus, it would seem that the trial court's task in assessing delays for purposes of Crim. R. 4(C) is an either-or proposition. The Majority's analysis is consistent with this approach. In point of fact, however, when considering challenges under this rule, we should not ignore a third category mentioned therein, i.e., court congestion and emergency. This category recognizes that there are circumstances in which it is not possible to conduct a trial within the prescribed time-frame. This exception has heretofore primarily involved the ability of a trial court to accommodate the speedy trial right in the context of its court calendar. Simply put, a congested court calendar sometimes renders it impossible to conduct a trial within the one-year "deadline." I place that word in quotation marks because the one-year anniversary of the filing of charges is not a deadline for trial in the strictest sense of that term. It is not immutable. There are circumstances in which a defendant must wait longer, even when he or she did not cause or contribute to the delay, such as in the case of the aforementioned congested calendar.

This brings me back to the issue at hand; who should be charged with the delay attributable to the State's interlocutory appeal? I believe the answer is that neither party should. In a slightly different context, i.e., the speedy trial right under Crim. R. 4(B)(1), our court was asked to decide whether a continuance necessitated by the inability of the State to comply with a late-filed (but not untimely) discovery request in time for the originally scheduled trial date should be charged to the State. *See Paul v. State*, 799 N.E.2d 1194. The trial court denied the request for discharge upon its finding that an emergency existed, the emergency being that the court could not reschedule trial before the speedy-trial deadline after the State was permitted a reasonable time to comply with the request. We concluded that the defendant's motion for discharge was properly denied upon the following rationale: (1) "[W]e do not envision the unique factual situation of this case arising with any frequency", *id.* at 1199; (2) the State was not derelict in its duties and acted expeditiously under the circumstances; and (3) "[a] greater problem would be created by holding otherwise as defendants would be encouraged to file motions for speedy trials under Rule 4(B)(1) and then delay requesting discovery, recognizing that the State's inability to comply in advance of trial will result in successful motions for discharge", *id.* at 1200. Although there are differences between the setting in *Paul* and the setting in the instant case, I believe the issues are

similar enough for that case to be instructive.

First, the facts of this case are unique and not likely to recur with any frequency. Second, there is no suggestion here that the State could have done anything to speed up the process of determining the legality of its request to discover the FCC records, short of abandoning it. Third, and most significantly, the delay here is attributable to the judicial process itself, i.e., the movement of cases through the appellate courts, which is entirely beyond the litigants' control in precisely the same way that a congested trial court calendar is beyond their control. Thus, I believe the time necessary to pursue an interlocutory appeal to its conclusion may be characterized as an "emergency" or caused by court "congestion" within the meaning of Crim. R. 4(C) so as to justify a continuance of the trial date for a reasonable time beyond the one-year limit. In view of the time it takes an appeal to wend its way through the appellate process, to hold otherwise could and in many cases would effectively deny the State the option of pursuing an interlocutory appeal of an unfavorable evidentiary ruling.

I would affirm the trial court's ruling on this motion.